Is, uh, I believe, Henry the marriage of Jones. It's, uh, 513-264. I'm the attorney for Stephen Jones. And I don't want to rehash a lot of things that I've tried to set forth in the briefs in this particular case. But the situation in this case is because of a number of factors and a number of decisions by the judge in this case, the particular decision that in this case against Stephen Jones is unfair and onerous, in my opinion. The first thing is, is that the court found basically, let's go back a little bit of facts, just a few. Mr. Jones started his firm, which is an elder care practice, in 2009 as a partnership with another attorney. A lot of the evidence in this case was his income and his financial situation prior to that situation. He had been formally employed by the Simmons firm in the Madison County, was making good money. The Simmons firm decided the testimony in the case was decided to go a different direction. As a result of that, the people who were doing kind of like general practice were pushed out. So Stephen decided to go in elder law. The testimony in this case also is in elder law. It's a little different when you do an elder law practice because what you do is you do a lot of referrals by individuals and you put on seminars. You go out to the Holiday Inn and you have dinner or breakfast for seniors who come in and you try to educate them and get them to be compliance peers. And therefore, there's considerable amount of overhead in that particular type of operation, more so than most other law practices. This case was filed in January of 2011. And at the time it was filed, Sandra Jones took out from the joint account $40,000, which Steve was not aware of. They continued after the case was filed to live together. And Steve was paying 100% of the expenses while Sandra was pocketing into her bank account not only the $40,000, but she also was putting in her salary, which was not significant, but it was there. I mean, she was making $20,000, $30,000, $25,000, $30,000 a year. She was putting that money in the bank. So what happens is, in January, Steve makes, and it's on page 113 of the abstract, is a breakdown of all the money that Steve got for 14 months. Where it went. That's exhibit number, the residence exhibit number 13 is number 3, and it's in page, abstract page 113. What Steve did is he paid his estimated taxes in January, paid 20 grand. So after that, he had a cash flow problem. And so what he did is he had an existing IRA, and he went and got, took some money out of the IRA. And the testimony was that he did this without Sandra's knowledge or agreement. The judge, in his decision, in this case on that issue, subsequently said that because he did that, he should, he took out $31,000. He should pay his wife half of that sum, and I'm assuming he meant because that was a dissipation of $15,500. The problem with that, it was pointed out to the court in the post-trial, and the court still didn't address it, was that he didn't get that full amount. In fact, counsel, in the direct examination of Mr. Jones and her case, asked him, well, you got, out of that IRA distribution, you got $17,000, didn't you? He said, yes. There's an exhibit in there put on by Mrs. Jones' attorney that shows that he got $17,000 at 14 with help for taxes. So that money goes into Steve's account. There was a substantial amount of discovery in this case. Both Mr. Jones produced all his bank records, financial statements, both for himself and his firm, as well as the other side subpoenaed them also from the bank. So they had two sets of them. There's nothing ever, last year in, that Steve had any accounts anywhere else other than his checking account personally and his office account. The exhibit on 113 shows all the money into his checking account and where it goes out. And here's, so here's what the court did. The court said, well, you took $31,000, $15,500 goes to your wife because you dissipated this. And I have a problem with that because how do you dissipate money when you use the money to pay marital expenses? And if you look at his checkbook, that's what happened to him. He didn't pay taxes. He paid student loans. He paid things with it. It's accounted for. The only thing it's not accounted for here is he took cash out over a period of, from the time it was filed to the time we tried his case in April. He took cash out and he accounted for all of that cash except for $2,700. And he took $14,000 in cash over that whole period of time. Then the court also said because you prepaid student loans in 2011, we're going to consider that an improper action on your part. The court doesn't say it's dissipation. It doesn't really say what it is. So we're going to give her, because you prepaid the student loans, we're going to give her $9,000 of that. The problem with that is, is the $9,000 came out of the same account that the IRA money went into. So, in effect, the same money is being doubled up on, in my opinion. In other words, $9,000 because you prepaid student loans. Even the money was in the bank account. And the whole amount that went in the bank account in which you could pay the money on the student loans came from the IRA. And then, if that wasn't bad enough, in this case, the court found out later because we had a motion to escrow the 2011 income tax return refund. We escrowed it. And there was a escrow of $17,000 tax refund for 2011. So what happens then? The judge gives Mrs. Jones half of that. So, essentially, when Steve takes out $31,000 to pay the mortgage payment, to pay the other expenses, to pay the kids' hockey, it's all there. Mrs. Jones, by the court's decision in this case, gets half the original withdrawal of $15,500, $9,000 for prepayment of student loans, even though that's not even a correct figure because some of the loans were regular monthly payments she paid before he prepaid anything. And the third thing, she gets half the tax refund of $8,500. So, essentially, she's getting $33,000 on a $31,000 withdrawal from the IRA account. We pointed this out to the court, and the court just chose to disregard whatsoever the facts. It's just there cannot be, first of all, in my opinion, based upon the cases I cited in the brief, dissipation when you pay marital debt. Dissipation generally is you spend the money on your girlfriend, you go out and gamble it, or you let the house go on mortgage foreclosure and you lose the house or something of that nature. How can you pay, and nobody was arguing, it's never been argued, that the student loans were marital debt that recurred by Stephen when he was married to Sandra. There was no argument that the IRA money were marital. So, if nothing else, that whole dealing of those funds by itself should be sufficient to reverse this case. The second issue in this case is where the IRA funds paid in while this couple was married. Yes, sir. There was no argument that the IRA money were marital debt. Oh, okay. I thought you'd said they weren't. No, I'm sorry. Make your point. The next issue is this, is the, if you read the decision, the court says for the other corporation in which Stephen has an interest, I'm going to give his wife $45,000. Okay. Now, this is his practice, right? Well. This professional corporation. Well, that's what, yeah, he is a professional corporation. Okay. So, the only thing left that he had to line it up was kind of like an investment corporation. It had no value. In fact, in our position, Stephen actually said, we'll give it to you. So, all we're talking about is LLC. Right. Okay. Well, first of all, for to give her $45,000, I would think the court can't come up with some figures. How did you arrive at what that is? We have an exhibit in there. It's on, I think it's on the, it's a liquidation value of that firm. In other words, it has all the assets of the firm, and it has all the debts and expenses of the firm, their associations, a lump, and so forth. That shows to the entire firm a negative value of $7,000. No depreciation. We're talking about just liquidating the assets versus the debt. Was there an evaluation of goodwill separately? Well, no, sir. And that's the problem here. And that's what I'm going to get to. So, when you do the liquidation, here's all the assets of the firm. Here's the debts of the firm. It's got their cash. It's got the jet of VW that they purchased. It's in there. It's got everything in that. They come out with a negative value. The judge says, well, Mr. Jones has the ability to earn in the future, so there'll be more income. And I agree. The problem with that is when you go and you give 60-40 division of some assets, 50-50, give her maintenance on top of that, all right, and then give her 45 where you have a business that has no shareholders' equity in it, then you're, in effect, giving her 45 grand for goodwill. And you can't do that under the cases I cited in the brief. That's the situation then. The other problem in this case, and it falls over to our position relative to the award of maintenance and child support in this case, it's our position based upon the testimony in this case that the amount set for maintenance and the amount set for child support is set too high, the reasons being are as follows. Mr. Jones' personal return with his wife, their joint return for 2011 wasn't prepared at the time we tried this case, even though later the court was aware that there was a refund because we eschewed the funds. The house was on the market for sale, but the mortgage was still being paid, hadn't sold. It got sold while this case was under advisement. One of the problems in this case is it was under advisement for nine months. Nine months. No reason for it being under advisement for nine months. What that does is that creates what I call an owner's situation for Mr. Jones, because what it does, based upon the amount of child support and based upon the amount of maintenance, it saddles Mr. Jones with an accrual, when the judge finally made his decision because he retroactively backed, of $53,000 that he owes to back child support and maintenance because of the underage for nine months. And in addition to that, as I pointed out in a post-trial motion, he was under a temporary child support order, which he was paying, and he was paying half the mortgage he was paying. Now, let's assume the court does nothing with this. I go back and I say, but we got $53,000, Judge, that we got to pay here, back child support and maintenance. Do I get credit for half the mortgage that he paid? Judge, did he, huh? No, I, okay. You know, I mean, do I get that or not? I'm assuming I can get what he paid in child support, but what about the half the mortgage he was paying? Does he get any credit for that? What was the difference in the child support that he was ordered and the amount of money paid in temporary? Correct. What was the difference? The difference? The child support in the temporary was, as I recall off the top of my head, it's like $1,600 and something, and then he was paying half the mortgage he was paying. It's the order of, it's in the, it was January, that temporary order was in January of, I'll take that back. It was in, yeah, it was January of 2012. He was ordered to pay $1,456 temporary child support plus half the mortgage he paid. Okay. And so I'm left in a situation, do I get credit for half of that house payment towards his maintenance? The other problem with the case is, like I said, it was continually argued by counsel in their position statements and in every phase of this case going into what, how much money Steve Jones made three or four years earlier, prior to 2009. What he made in 2011, based upon the return of his partnership, his money on K1 was going to be about $118,000. He didn't have any outside money. Okay. The judge found his net to be $100,000. That's incorrect under the tax law. He also didn't deduct from that anything in terms of $9,000 a year for medical insurance on the children and on Mrs. Jones. He didn't, he didn't, I mean, it just, there's no way that it can add up in this case. Mr. Jones is going to be paying $5,300. The court's ordered Mr. Jones is going to be paying $53,796 a year gross for maintenance and child support. Thank you, counsel. Thank you, Your Honor. My name for the audio record is Curtis Blood, and I represent Sandra Jones, the appellee. Just a couple of opening remarks. This is a review, obviously, of a financial settlement, and basically this is an abuse of discretion review. The question is whether the circuit judge abused his discretion, not whether somebody would have done this differently. And it's a very differential standard of review, and I submit from what you've already heard, this is a very complex financial situation. You've got someone who went from working at a major law firm to self-employed, and it's complex, and it's changing. And I submit first that there was quite a bit of range in here as to what could be found. And I submit second, and it's the other hand, the other hand with two hands clapping, is no matter what the court found in this case financially, there was plenty of criticisms that couldn't be made. He couldn't be wrong, but he couldn't be right. We're going to be here no matter what. We are conceding one issue. I'll get to that. Frankly, I didn't understand it in the white cover brief. When I wrote the blue cover brief, I overlooked it. It's only one sentence, but it's right. I'll get to that. I understood it much better when I saw it in the black brief. Actually, that wasn't talked about today, but I'll get there. But I'd like to get right to this dissipation issue, and it's almost like we're talking about two different cases. The $31,000 dissipation, the court awarded Santa half of the $31,000 withdrawal. Now, Stephen didn't get the whole $31,000, but there's no rule that what's dissipated has to be enjoyed, too. There's no rule that you have to receive it. That's the amount that the marriage was deprived of through his actions. The argument from Stephen today is, but that money just went to pay expenses. It went to pay expenses of living. That's not what Stephen said at the trial. He was asked twice what he did with the money, and both times his answer was, quote, to pay the house payment, end quote. That's pages R-70 and R-101 of the record. The house payment was $2,200. This was $31,000. A lot of difference here, and he's judged by that. He's got a… $2,200 per year, he said. $2,200 per month on her money. That's at R-77, if you want to know the exact, to the penny amount of the house payment. $2,261.12. His testimony was incredible. Certainly not an abuse of discretion to not believe him. One thing that I didn't hear, and it's not reflected directly in the judgment, is two days after Stephen went through this $31,000, he bought cash, brand new car, a jet for the law firm. Remember, the law firm is two partners. It's Stephen and his girlfriend. Basically, the argument with her was, well, usually when it's dissipation, you should buy stuff for your girlfriend. Well, that's what this car was, basically. When the cobwebs are cleared away, this is car for self and girlfriend, brand new car out of marital funds. The judge asked about that. He wanted to know the timing. He asked that in open court. What was the timing? How much later was that purchase of the car? Quoted that in my brief. That could not help but have an effect on the dissipation finding. The $18,000 from the school loan, I think the judge clearly made a mistake on that. And I didn't catch this until I saw the yellow cover briefing. Right there on the first page, it says, well, wait a minute, $18,000? That can't be right. Because he had to pay school loans annually. I mean, he prepaid. He prepaid and paid a total of $18,000. But it wasn't all prepayment of the $18,000. He also had to pay the regular payments, $359 a month. You've got to subtract those. Well, I think they're right. You do have to subtract those. And that means that the prepayment was not $18,000. That means it was only $13,344. And I'm using appellant's own figures from the first page of the reply brief. It's only $13,444. So the dissipation shouldn't have been half of $18,000 or $9,000. It should have been half of $13,344 or $66,72. So I agree with what's on that page that the circuit court cheated him out of $2,300. And I agree with that. I should have caught that. I missed it. I'm sorry about that. But other than that, basically what he got caught on was as soon as this lawsuit was filed, he paid the school loans off. He paid them quick. I guess he realized he was the one that was going to get stuck with them, and he paid them down with the marital funds. No permission. He just went out and did it. And that's the rest of the dissipation. The lump sum. The lump sum payment, I'd like to show the court that. I don't just want to talk about it. I'd like to show it to you. And I have not yet heard or seen appellant correctly state what the circuit court said. It's been misstated. It's misquoted in the first brief. It's not acknowledged in the reply brief. It's not acknowledged today. And I think you might want to grab the judgment. It's in the appellant's brief. It's in the appendix. It starts at A58. If you split that volume in half, it pretty much flips close to that. A58 is where the judgment starts. And it's by order. And as you go through it, page 2 is background. Page 3 is child support. 4 is maintenance. 5 is other matters. And, of course, that's where we start talking about the house, the vehicles, life insurance, basically the assets. This is the assets and liability. And if you follow that along to page 7 of this judgment, which is A64 in the appendix, here's what the circuit court says about the lump sum. As a lump sum distribution, Sandra is awarded the sum of $45,000 to offset the value of all other amounts, assets and marital interests, including those in Stephen's corporation. This is almost the end of the judgment. That's paragraph 21. You go two more paragraphs down, and it's obviously the judge is winding up. Now he's on attorney's fees. All other amounts. The word all is left out in appellant's brief. We tried to point it out, but it's been overlooked here today, too. The value of all other amounts. What does that mean? It means the circuit court came down to the end of the case, divided everything up, and he saw that Sandra didn't have enough of the assets yet. He hadn't mentioned the corporation yet. He mentioned it. He hadn't mentioned it. Chibi on him. But he mentioned it. But this isn't for the corporation. This is a lump sum because when he got to the bottom of the ledger, it wasn't quite right. That's what this means. I mean, it's a much better explanation than the one we heard, and it explains the use of the word all. Another important sentence, and this starts on the same page. This is paragraph 26 where the court says, in making this division of assets and property, including spousal maintenance, the court has considered the totality of the financial circumstances of each of the parties, and in granting any one award or denial of an award therein. I'm reading, so I get it right. The court has considered the entire evidence and the financial impact as it affects each party rather than to view the matter as a series of individual rulings. Well, doesn't that tell us what we just heard about the award of $45,000 offset the value of all other amounts? Circuit court, I don't even know how much he paid attention to the so-called dissipation. He had an idea of how much had to go to each party, and he's telling us here that that's what he's done. And if, as I suspect, based on what I said, the court takes $2,300 off of the dissipation, then the financial issues go back, and the circuit court, there's nothing wrong with his overall number. He's not accused of being wrong on the overall numbers. I've got to think he's got the authority and is likely to just change the lump sum by $2,300. That's what he ought to be doing based on what he has written, if he means it. So based on that, I don't know. There's question whether the dissipation is even a prejudicial error, although if it is, I can see the judge didn't get that number right. But nonetheless, the judge has a number in mind here, and these paragraphs have to be – these two paragraphs on the same page have to be considered together, and I think what they mean, they mean the judge had a particular final number in mind. There's no mention in his judgment about goodwill, none at all. The judge doesn't have to find goodwill. There was no testimony that it was goodwill. There's no legal requirement that the judge value the corporation. The only evidence we had was that the corporation didn't have any value, and the judge does not – the circuit court does not specifically state that this corporation has any value. Nowhere in this judgment does he say that this corporation has value. And I think whatever is said on it, either party can criticize it, but it's not there. It's the Pellof's duty in this court to prove error, and where is the proof of error? It's in the valuation of the corporation. Where is the proof that the court gave the corporation any positive value whatsoever? It's not here. Now, we're hearing that the circuit court should have asked for the 2011 tax returns. Well, shouldn't the parties have offered them when they became available? Since when is it the judge's duty to ask for evidence? I assume he's got the usual busy docket. I mean, it took him nine months to do this case, and shouldn't – wasn't that up to the parties? Wasn't that up to appellant? I don't think it was up to the judge. It seems unfair. The issue of income, Stephen's income, like I said, very complex. Started with Simmons Law Firm, ended up at Jones Elder Law, a lot of water under the bridge between. Anything that the judge did in this case was going to be criticized, and it's awfully complex. But what I keep hearing throughout appellant's writing and here today is that the judge messed up on Stephen's income in 2011. The statute does not require the court to find the income of the obligor for a particular year or for any year or for any amount of time. Nor did the judge purport to do that. He found Stephen's income at this time. That's what he said, at this time. And really, you couldn't expect him to do any better than that. There was so much evidence that pertained to income. It doesn't have to be 2011 income. It doesn't have to be annual income. It doesn't have to be a consideration of income for just one year. But there was a tremendous amount of evidence in here, a tremendous range this could have been found over. Stephen suggested $65,000, I believe, in his position statement. I think it could have been a lot more than $100,000 for approximate net income based on these figures. After all, the law firm grossed $659,000 in 2011. We don't know what they grossed in 2012. We weren't told. So is $100,000, is that the kind of number with a $659,000 gross that all reasonable minds would agree is too much? We would have liked it to have been more, but I think this is well, well within the reasonable range. And that's all it's got to be. For the rest of you, the line of briefs, again, this is abuse of discretion standard, very complex matter. The judge obviously had a target in mind. It looks like from his judgment that it is. And other than the $2,300 error I mentioned, I'd suggest that everything he did was within the wide range of discretion that we give the circuit court in a marital net. If there aren't any questions, I'll answer them. Thank you, Your Honors. Several things by way of rebuttal here. First of all, take cash from your firm and buy a car that's more economically feasible. I don't think that's dissipation. They seem, what Constance seems to say is that Steve somehow took the $17,000 net from the IRA and bought this Jetta. There's absolutely no evidence of that. It was purchased out of the law firm. It had nothing to do with his IRA account, period. In fact, they alleged that that purchase was dissipation, and the trial court didn't find that. He talks about this $45,000 payment because the judge said in his decision all other amounts, apparently to be equalization. I know what equalization payments are. I've seen them in other cases. Generally, there would be a situation where maybe the husband got the business, and he couldn't divide the business up, so they gave the wife some money to equalize the value of the business. In this case, though, there's no evidence that the business was worth anything close to what that amount was. That's number one. And number two, in this particular case, the judge had already divided up every asset. I mean, every bank account. The IRA account was $60.40 to the wife. Bank account, she got her cash value for life insurance. We've got every asset in this case. So what counsel is essentially saying is that if the judge in a given case divides everything up, $60.40, and then comes along, I mean, every asset everybody knows is $60.40, and he comes along and puts it in there, and I'm going to give one side to offset all the other amounts a flat dollar figure, that that's not an abuse of discretion. I think it is. Thank you. Thank you, counsel. Court will be in recess until 1.30.